RECEIVED
JUN 28 2007
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

MARK SHANNON WHEELER #139044 Plaintiff,
v.
BILL SEGREST, et al.,
Defendant

Evidentiary Hearing Requested
Civil Action #2:06-CV-274-MHT (CSC); (WO)
2:06cv274-MHT

Motion for Relief from Final ORDER Judgment and DECREE

In Compliance With Federal Rules of Civil Procedure, Rule 60(b); and (1) and (2) and (3), and (4) and (5) and (6), and all of 60(b), and Rule 58. Mark Shannon Wheeler being the plaintiff, and Comes now the plaintiff, in this UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION, and moves this Court to GRANT this Motion FOR Relief from FINAL ORDER, JUDGMENT and DECREE entered into this Court by Judge Myron H. Thompson on June 1st, 2007, Doc. #96-1 Which Plaintiff Wheeler seeks relief from said Judgment which was in accordance with memorandum opinion also dated June 1st, 2007, Signed also /s/ Myron H. Thompson UNITED STATES DISTRICT JUDGE.
Plaintiff will argue the opinion, and Judgment entered thereof (above) for said Judgment, and numberated 1-4 on said Judgment, and Claims as Grounds for due relief are as follows: In objection to said 1-4 Judgment of Myron H. Thompson, Plaintiff Contends with merit that; MISTAKES, and INADVERTENCE, EXUSABLE NEGLECT, FRAUD; (NEWLY DISCOVERED EVIDENCE which by due diligence Could not have been discovered in time (violation occured on 6-6-07)) but arising (from above styled Contentions) now raised by Plaintiff to be addressed by JUDGES, so as to relieve Party (Plaintiff Wheeler) from above said JUDGEMENT, and to set it aside by this independent Actions by Plaintiff Wheeler. Plaintiff swears this to be true and Correct and the foregoing, this the 20th day of June, 2007.

[signature]
MARK SHANNON WHEELER #139044
Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

MARK SHANNON WHEELER, #139044 plaintiff, )
)
v. ) civil Action #2:06-cv-00274-MHT-(CSC); (WO)
)
BILL SEGREST, et al, )
Defendant. )

## Motion To Incorporate exhibits 1-4

Comes Now the plaintiff Mark Shannon Wheeler, in this United States District Court for the Middle District of Alabama Northern Division, and moves this Court to GRANT this Motion To Incorporate exhibits 1-4, attached heretowith, defined As Follows:

(1). Exhibit 1, Alabama Dept. of Corrections Progress Review Form of Mark Shannon Wheeler (actually executed on 6-1-07), see Signiture of Classification Specialist, Tanya Morris 6-1-07, Plaintiff REFUSED to Sign, dated 6-6-07.

(2) Exhibit 2, Presentence Investigation Report (P.S.I.) Present offense details (eroneous) of Plaintiff Wheeler.

(3) Exhibit 3; Presentence Investigation Report, Continued (eroneous) details that caused unfair Parole review hearing, (even though 22 months late), for Plaintiff Wheeler.

(4) Exhibit 4, Page #258 of Trial Transcript of Plaintiff Wheeler's trial in Cleburne County, Case #CC-93-80, Which Proves there is NO EVIDENCE OF ANY SEXUAL MUTILATION.

Plaintiff Wheeler seeks this Motion's Granting being true and Correct, this the 20th day of June, 2007.

[signature]

MARK SHANNON WHEELER, Ais# 139044
Plaintiff, Pro Se

10/14/97

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - MAY 15, 2007 (003)
(COU122)

AIS #: 00139044R SSN: 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 RACE/SEX: W/M DATE OF BIRTH: 05/13/1961
NAME: WHEELER, MARK SHANNON CUSTODY: MED9 SECURITY LEVEL: 4
INST: KILBY CORRECTIONAL FACILITY TIME SRVD: 13Y08M24 LAST DISC: 08 16 2001
CRME: MURDER MIN REL DT: 99/99/9999 ACTIVE DET: 0

DISC: REFUSING TO WORK/ENCOURAGING O PRL CONS: 07/01/2010 EDUCAT LEV: 12

WL/PGM: Bay Cleaner PRIM OCCUP: MACHINIST, MACHINIST APPRENTIC

RECOMMENDED INSTITUTION: Kilby CF RECOMMENDED CUSTODY: Med

JUSTIFICATION: APR 'Restricted offender serving LIFE for Murder - PSI avail, cut jugular vein, cut nipples & genitalia off, placing parts in a bottle of alcohol, tied bottle to a tire rims along w/ a cinder block and threw body into the Tallapoosa River. '82 Arson II '84 Burg. III, Various Poss of Prop. No recomm. Based on 'Restricted' offender Status - Prohib. SL I + II

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED: (04)(00) 5/15/07 APP. S/L: ____

[signature] 6/1/07 [signature] 6/1/07
CLASSIFICATION SPECIALIST DATE WARDEN OR DESIGNEE DATE

[signature] 6/1/07 [signature] 6/1/07
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC. DATE CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED ___ DENIED; DIVERTED TO: ______ REASONS: ______

CRB MEMBER DATE

___ APPROVED ___ DENIED; DIVERTED TO: ______ REASONS: ______

CRB MEMBER DATE

___ APPROVED ___ DENIED; DIVERTED TO: ______ REASONS: ______

CRB MEMBER DATE

FINAL DECISION: INST KCF CUSTODY Med DATE 6-6-07

DATE INMATE INFORMED: 6/1/07 INMATE'S SIGNATURE: X Refused to sign

Last Action Taken: 6/04

Exhibit 1

## PRESENT OFFENSE

**County, Court, and Case Number:**

Cleburne County Circuit Court CC 93-80

**Offense:**

Murder

**Sentence:**

**Date of Sentence:**

**Details of Offense:**

Sixteen year old Lisa Ann Beason left the residence of Dorothy Carroll in Heflin, Alabama in mid-June, 1993. Having lived in the Carroll residence a short period of time, she left in the company of Mark Wheeler supposedly to live with Wheeler in his rented home. The investigation reveals that no one saw Beason alive after this date.

The body of Beason was recovered from the Tallapoosa River, two miles south of Heflin on Wednesday, July 7, 1993, after being discovered by Michael, Brad, and Doyle Thaxton while rafting. The decomposing body was weighted down by tire rims and a cinder block attached to the neck and ankles by rope. The body was delivered to Department of Forensic Sciences Medical Examiner Joseph H. Embry, M.D., and a cause of death was undetermined. Embry found trauma to the skull area and a sharp incision to the neck area. Also present were a series of incised wounds on the left thigh. It was determined that the aforementioned ropes had been looped around the ankles and placed into an incision in the distal right ankle in the Achilles tendon area. [The upper torso was significantly decomposed] but Embry was able to identify Beason from radiographs taken in Texas previously.

After learning of the discovery of a body from the river, Wheeler voluntarily checked himself into Brawner Psychiatric Institute for substance abuse problems. Wheeler was arrested for an unrelated Calhoun County, Alabama charge after being discharged from Brawner and was transported to the Cleburne County Jail. Wheeler, on August 18, 1993, in a statement to Lt. Greg Cole of the Alabama Bureau of Investigation, denied knowing Lisa Ann Beason or having any connection to her disappearance or murder. Wheeler was transported to the Calhoun County Jail and indicated his desire to talk with investigators about the murder.

On August 21, 1993, Wheeler wrote his statement and then gave a tape recorded (and later transcribed) statement regarding his role in the disappearance and death of Beason. Wheeler stated Beason had gone to his residence that evening and that on the following morning she and he argued over his desire to have

sexual relations with her. According to Wheeler, Beason struck him in the eye and scratched his face and ears. He struck her with a blackjack from his pocket, knocking her unconscious or dead. He cut her jugular vein with a knife and watched her bleed. He placed the tip of a knife blade in her eye to see if she was dead. He cut off one of her nipples and part of her genitalia placing the parts into a bottle of alcohol. After visiting one of his friends, he took tire rims and a cinder block back to his residence. He cut a hole in the ankle area and placed a rope through it. He loaded the body, drove to the Tallapoosa River area where it was later found, and tied a rope around Beason's neck and around her ankles, inserting the rope through the hole in the ankle area so the body would be less likely to float to the top of the water. He rolled the body into the water and later did the same with her clothes and belongings at the residence. He cleaned up the room where he had killed Beason and then threw the knife, [bottle of body parts] and a sheet from the bed off various roads in Cleburne County. He hid a plastic glove he had used in a planter in front of his residence.

On August 26, 1993, Forensic Science Investigator Mark Hopwood discovered, by utilizing phenolphthalein and luminol test, the presence of blood on the walls and floor in the residence of Wheeler. Serologist Lillie Harper confirmed the findings of blood on the walls. Sheriff Darrell Durham, with the aid of Mark Wheeler, recovered the sheet and plastic glove which Wheeler said he had hidden. Witnesses testified having seen Wheeler with a blackened eye soon after the disappearance of Beason.

Wheeler was diagnosed by Certified Forensic Examiner Vonceil C. Smith, Ph.D., of Taylor Hardin Secure Medical Facility as suffering from Major Depression with Psychotic Features and stated her belief that "Mr. Wheeler's ability to conform his behavior to societal standards and personal morals vacillated over the fairly lengthy time of the crime" and that "he shows evidence of a variety of diagnostic categories including personality disorder, affective disorder, and may meet the criteria for frank thought disorder in its prodromal phase."

**Circumstances Barring Parole:**

The victim is deceased.

**Subject's Statement:**

Wheeler refused to talk with me or to let me interview him.

**Case Status of Co-Defendants:**

None

**Victim Notification Information:**

The victim in this case was Lisa Ann Beason, white female, age sixteen.

**Victim Impact:**

The victim is deceased.

MR. GIDDENS: No objection.

THE COURT: It will be admitted.

(Whereupon State's Exhibit Number 22 was admitted into evidence without objection.)

MR. FIELD: That's all. Thank you, Doctor.

CROSS EXAMINATION

BY MR. GIDDENS:

Q. Did you find any evidence that that body had been sexually mutilated?

A. I already answered that. I did not.

Q. Okay. Well, I'm going to ask you again. If you would just answer my questions, please, sir. By not finding that you're not telling the jury that didn't happen, are you?

A. No, sir.

Q. So it's possible it was but due to the decomposition it's just not evidence, correct?

A. I did not see it. That's correct.

Q. All right. You said that you don't know what caused this young woman's death, do you?

A. That's correct.

Q. Was her skull fractured?

A. Yes, sir.

Exhibit 4

# FACTS IN SUPPORT OF GROUNDS

Plaintiff Wheeler Contends that No Statute
of limitations violation exist, Plaintiff's hearing
For the Parole review was held 7-13-05, Plaintiff Filed
Civil Complaint in march 2006, and Future violations
will arise if Plaintiff Wheeler is not granted due relief,
"MISTAKES" were made.
Plaintiff Wheeler Contends the life sentence im-
posed on him in MAY 1994 guarantees him a FAIR Parole Co-
nsideration, even though Wheeler is not guaranteed to be
granted Parole and Wheeler has repeatedly stated this.
Plaintiff has, and again asserts that Defendant Segrest et al,
did intentionally Cause Plaintiff Wheeler to be made 22 months
late for a due FAIR review for Parole "(FRAUD)". Said Defen-
dants also relied on Ficticious material (P.S.I.) in Consider-
ing Plaintiff Wheeler For Parole, (See Exhibit 4 Attachment which
shows No evidence exist of any sexual mutilation), as Wheeler
has in this Cause of action Incorporated (TR-258 - Exhibit 4)
of Plaintiff Wheeler's trial transcript page 258 which shows
this Court that doctor (state Pathologist Dr. Joseph Embry) did
under oath state he examined the remains, and there
WAS No evidence that the body had been sexually muti-
lated, (See Exhibit 4, "Not Evidence"). "MISTAKES" were
made before hand in the P.S.I. by the Parole/Probation
Officer Harold Duncan relied on a Police report of Pl-
aintiff Wheeler's (Ficticeous) statement Wheeler later retr-
acted. If the Parole officer (Duncan) would have properly in-
vestigated in the orchestration of the P.S.I., he would have
contacted the Pathologist (Embry) whom testified at Wheeler's
trial (see exhibit 4). Wheeler when questioned by authorities
WAS shown Pictures of the upper-Torso "only", then, 3 days
later Wheeler gave a supposed Confession Creating the Fi-
cticeous story, then Wheeler was arrested for Murder on
Aug. 24th, 1993 (officially) but wheeler had been in Jail since
Aug. 17th, 1993 on an unrelated property case (Theft II, Nol Pross)
Wheeler gave statement on Aug. 20th, 1993 which is what
ended up being put in P.S.I. before trial. Wheeler in his
First statement denied Knowing the deceased, But in his
2nd statement created an Insanity type of defense, that
WAS discredited because the Bottom half of the remains
was still intact, showing No genitalia mutilation. Wheeler
hadn't been shown pictures of the bottom half, so he didn't
know that story wouldn't work. Wheeler was protecting
someone else as well as himself. Wheeler thought it
would work by seeing the upper torso (badly decomposed) see
exhibit 2 (page 4) second Paragraph. Wheeler figured the
whole body WAS the same WAY, but it WASn't.

Plaintiff Wheeler did not allow an interview for the P.S.I. because Wheeler knew Duncan didn't like the Plaintiff as Plaintiff Wheeler felt Duncan would seek to write something incriminating, (Duncan did anyhow). see Exhibit-3, (Page 5) subject's statement: Wheeler refused to talk with me or to let me interview him. This constitutes on Defendant's part et al (Parole Probation Officer Duncan), "FRAUD, MISTAKES, Excusable NEGLECT". As Wheeler has said, Wheeler retracted his own statement after trial, but did not testify at trial. Duncan wrote the sexual mutilation as factual, when it was not, and is not Evidence. Wheeler is due Relief, and an immediate Fair Parole consideration, having had an unfair parole review (late 22 months) on July 13th, 2005 with eroneous information considered unfairly by the BOARD.

By the Defendant et al, considering eroneous information in Plaintiff Wheeler's file, the likely hood of an actual fair hearing for parole consideration posibility was non existent (FRAUD), but was futile to the degree that defendant et al, and therefor Cheif Mag; Judge Coody, and District Judge Thompson concured, (Excusable Neglect); that Plaintiff Wheeler has inadvertedly a life without Parole Sentence, having changed Wheeler's sentence to mandatory, rather than Discretionary, stateing and adopting that a fair hearing transpired, late, and that there is no difference in a 3 set off, and a 5 year set off, and that a fair hearing could happen in the future as it stands. Classified to U.S. Supreme Court Digest; Constitutional Law § 83 - ex post laws - Change from discretionary to mandatory sentence - imposition of greater punishment 7a, 7b In context of ex post facto analysis, a law may meet the requirement that it be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory; the critical question is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence.

Plaintiff Wheeler's sentence is life, with-the-Possibility-of-Parole, (by a fair and impartial Panel).

Defendant et al suggest suggest that Plaintiff Wheeler's life sentence doesn't guarantee a Parole so as to the degree of Promulgating a life without Parole sentence by not conducting Wheeler a fair and impartial review for consideration, in the past by the eroneous information, and plan on it again (FRAUD), both Coody, and Thompson concurring, with Prejudice (Excusable Neglect) (MISTAKES); but fair hearing by the due process of Wheeler's life sentencing in Cleburne County Circuit Court in 1994 was, and is a guarantee for proper Equal Consideration, so as

to not discriminate against Wheeler's due Process at Wheeler's Sentencing, and Cause Cruel and unusual Punishment as it has. Wheeler has been treated differently, and has proven that, and has been prejudiced. Plaintiff Wheeler was not Charged with any Kind of Corpse mutilation, but is yet being "Restricted" in his Dept. of Correction's classification Progress review because of the P.S.I. Information that is eroneous. (See exhibit 1), "Justification": APR 'Restricted offender serving life for murder - PSI avail, cut......".

Absent accurate information (for evidence) for a fair (and impartial) hearing for parole consideration, Plaintiff Wheeler Could NEVER, make Parole; Which denies him his life sentence (original guarantee), which was denied Wheeler July 13th, 2005 to a fair hearing, the guarantee was set upon Wheeler May 6th 1994 by the Honorable District Judge George Simpson (Clay Co, Presiding in Cleburne Co Circuit Court), Heflin, Alabama.

Defendant et al, and Mag. Coody, and District Judge Thompson with Prejudice, all disregarded Wheeler's fair hearing, insinuating a life sentence is infinite, when for instance, a life expectancy if it were 75 years, at age 70, a 5 year set off would undoubtly create the death sentence, making discretionary, mandatory life without a fair hearing. So to say there is no difference of a 3 to 5 year set off is ludicris, as is an unfair hearing at any stage in time. (MISTAKES) (Inadvertence)

67 LED2D 17, 450 US 24 WEAVER V GRAHAM

Citations from Hoyt WEAVER, Petitioner,
vs.
Robert GRAHAM, Governor of Florida
450 US 24, 67 LEd 2d 17, 101 S Ct 960

[NO. 79-5780]
Argued Nov. 5, 1980
Decided Feb. 24, 1981

states:

Constitutional Law §83 - ex post facto laws Changing punishment

2. The Constitution's ex post facto prohibitions (Art I §9, cl 3; Art I, §10, cl 1) forbid the Congress and the states from enacting any law which imposes a punishment for an act which is not punishable at the time it was committed, or imposes additional punishment to that then prescribed.

Constitutional Law §68.5; Courts §121 - ex post facto laws - Separation of Powers

3a, 3b. The Constitution's ex post facto prohibitions (Art I, §9, cl 3; Art I, §10, cl 1) uphold the separation of powers by Confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law.

Constitutional Law §73 - ex post facto laws

4. To be ex post facto, a criminal or penal law must be retrospective in that it must apply to events occurring before its enactment and it must disadvantage the offender affected by it, but it need not impair a "vested right".

Constitutional Law §83 - ex post facto laws - Change in punishment

6. Critical to relief under the ex post facto clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

Constitutional Law §83 - ex post facto laws - Change from discretionary to mandatory sentence - imposition of greater punishment

7a; 7b. In the context of ex post facto analysis, a law may meet the requirement that it be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory; the critical question is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence.

Constitutional law §76 - ex post facto laws - requirement of disadvantage to offender

9. To determine whether a law meets the requirement that it disadvantage the offender affected by it for purposes of ex post facto analysis, the inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual.

Appeal and Error §1692.2 - ex post facto laws - proper relief

10a, 10b. The proper relief for the United States Supreme Court to provide upon concluding that a state prisoner is being treated under an ex post facto law, is to remand to permit the state court to apply, if possible the law in place when his crime occurred, any severable provisions of the statute containing such law which are not ex post facto still being applicable to such prisoner.

SYLLABUS

Held:

..... (a) For a criminal or penal law to be ex post facto, it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it, Lindsey v. Washington, 301 US 397, 401, 81 L Ed 1182, 57 S Ct 797; Calder v Bull, 3 Dall 386, 390, 1 L Ed 648. It need not impair a "vested right." Even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Ex Post Facto Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

Cont:

(b)..... Regardless of whether or not the prospect of gaintime was in some technical sense part of the petitioner's sentence, the statute substantially alters the consequences attached to a crime already completed, changing the quantum of punishment, and thus is a retrospective law which can be constitutionally applied to petitioner only if it is not to his detriment.

cont:

(c)..... lengthens the period that someone in Petitioner's Position must spend in prison.

376 So 2d 855, reverse and remanded.

Parole Consideration (an impartial and fair hearing) is a stipulated transcribed term as a sentence imposed. Failure to hold Plaintiff Wheeler a fair hearing with truthful accurate P.S.I. information (at Parole hearing) causes Honorable District Judge George Simpson's original sentencing document to be nothing more than a Ball faced lie. (FRAUD) so now the defendant et al has illegaly and unjustly converted Plaintiff Wheeler's sentence to life; without the possibility of parole at the discretion of the Honorable Alabama Board of Pardons and Paroles.

OPINION
[450 US 27]

II Justice Marshall delivered the Opinion of The Court. ....

[2][3a] The ex post facto prohibition[8] forbids the Congress and the states to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Cummings v Missouri, 4 Wall 277, 325-326, 18 L Ed 356 (1867). See Lindsey v. Washington, 301 US 397, 401, 81 L Ed 1182, 57 S Ct 797 (1937); Rooney v North Dakota, 196 US 319, 324-325, 49 L Ed 494, 25 S Ct 264 (1905); In re Medley, 134 US 160, 171, 33 L Ed 835, 10 S Ct 384 (1980); Calder v Bull, 3 Dall 386, 390, 1 L Ed 648 (1798).[9] Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly [450 US 29] changed. Dobbert v Florida, 432 US 282, 298, 53 L Ed 2d 344, 97 S Ct 2290 (1977); Kring v Missouri, 107 US 221, 229, 27 L Ed 506, 2 S Ct 443 (1883); Calder v Bull, supra, at 387, 1 L Ed 648. The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. Malloy v. South Carolina, 237 US 180, 183, 59 L Ed 905, 35 S Ct 507 (1915);

Cont;

Kring v Missouri, Supra, at 229, 27 L Ed 506, 2 S Ct 443; Fletcher v Peck, 6 Cranch 87, 138, 3 L Ed 162 (1810); Calder v Bull, supra, at 395, 396 1 L Ed 648 (Patterson, J.); the Federalist No. 44 (J. Madison), No. 84 (A. Hamilton).[10]

[450 US 30] cont;

... Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

[450 US 33]

For prisoners who committed crimes before its enactment, § 944.275(1) substantially alters the consequences attached to a crime already completed, and therefore changes "the quantum of punishment." see Dobbert v. Florida, 432 US, at 293-294, 53 L Ed 2d 344, 97 S Ct 2290. Therefore, it is a retrospective law which can be constitutionally applied to petitioner only if it is not to his detriment. Id., at 294, 53 L Ed 2d 344, 97 S Ct 2290.

B ... [1c] .... By definition, this reduction in gain-time accumulation "lengthens the period that someone in petitioner's position **must** spend in prison." [Italics mine] §944.275(1).

FOOT NOTES

5 "No State shall ... pass any ... ex post facto law." U.S. Const. Art I §10. cl 1.

8 U.S. Const, Art I, §9, cl 3; Art I § 10, cl 1 "So much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found twice in the Constitution." Kring v Missouri, 107 US 221, 227, 27 L Ed 506, 2 S Ct 443 (1883).

9 "The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" after the fact. Calder v Bull, 3 Dall, at 397, 1 L Ed 648 (Patterson, J). see also Fletcher v Peck, 6 Cranch 87, 138, 3 L Ed 162 (1810). ("An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed").

cont:

10

[3b] The ex post facto prohibition also upholds the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law. Cf. Ogden v Blackledge, 2 Cranch 272, 277, 2L Ed 276 (1804).

11 see Jaehne v New York, 128 US 189, 194, 32 L Ed 398, 9 S Ct 70 (1888) (Portion of legislation void which "'should endeavor to reach by its retroactive operation acts before committed'") (quoting T. Cooley, Constitutional Limitations 215 (5th ed 1883)).

12

[5b] We have also held that no ex post facto violation occurs if the change effected is merely procedural, and does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." Hopt v Utah, 110 US 574, 590, 28 L Ed 262, 4 S Ct 202 (1884). See Dobbert v Florida, 432 US 282, 293, 53 L Ed 2d 344, 97 S Ct 2290 (1977). Alteration of a substantial right, however, is not merely procedural, even if the statute takes a seemingly procedural form. Thompson v Utah, 170 US 343, 354-355, 42 L Ed 1061, 18 S Ct 620 (1898); Kring v Missouri, supra, at 232, 27 L Ed 506, 2 S Ct 443.

13

.... When a Court engages in ex post facto analysis, which is concerned soley with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, it is irrelevant whether the statutory change touches any vested rights. Several state Courts have properly distinguished vested rights from ex post facto concerns. E.g. State v Curtis, 363 So 2d 1375, 1379, 1382 (La 1978); State ex rel. Woodward v Board of Parole, 155 La 699, 700, 99 So 534, 535-536 (1924); Murphy v Commonwealth, 172 Mass 264, 272, 52 NE 505, 507 (1899).

In the adjudication of this case, Judge Coody and District Judge Thompson both siding with defendant etal, dims the light of Justice, by allowing a factual determination to be made by the use of eroneous information to prejudice plaintiff Wheeler. (EXCUSABLE NEGLECT); (INADVERTENCE)

cont:

15 "The Constitution deals with substance, not shadows. Its inhibition was levelled at the thing, not the name. It intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment, under any form, however disguised." Cummings v Missouri, 4 Wall 277, 325, 18 L Ed 356 (1867).

Cont.' 17

[7b] Even when the sentence is at issue, a law may be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory. Lindsey v Washington, 301 US 397, 401, 81 L Ed 1182, 57 S Ct 797 (1937).

Plaintiff Wheeler was set off 5 years for next review, but when Wheeler was sentenced in 1994, the max was 3 year set off causing (INADVERTENCE).

Furthermore, the 22 months Wheeler was made late by Defendant et al for a review (fair and impartial, if it were), is for the most part relevant, as if plaintiff Wheeler had only 21 months to live after his original parole review date was due, the late hearing of 22 months would have constituted the death penalty, denying Wheeler a fair and impartial review, causing it to be detrimental.

In the fairness, "the fundamental fairness principle of law," should decide the outcome to how the Government abide by the rules of law it establishes to govern the circumstances," or in this case, just to do their job fairly. On May 6th, 1994, the plaintiff was relying on the fairness interest of Parole Consideration. And "inadvertenly" the fairness principle has been omitted by the Parole Board (defendant et al).

In retrospect, this leaves only the interest of a life sentence, and not that of "a fair parole hearing".

Cont:

20.... Moreover, replacement of mandatory sentence reduction with discretionary sentence reduction cannot be permissible in light of Lindsey v Washington, 301 US, at 401, 81 L Ed 1182, 57 S Ct 797. There, we rejected as an ex post facto violation a legislative change from flexible sentencing to mandatory maximum sentencing because the retrospective legislation restricted defendants opportunity to serve less than the maximum time in prison.

22

[10b] The proper relief upon a conclusion that a state prisoner is being treated under an ex post facto law is to remand to permit the state court to apply, if possible, the law in place when his crime occurred. See Lindsey v Washington, supra, at 402, 81 L Ed 1182, 57 S Ct 797, In re Medley, supra, at 173, 33 L Ed 835, 10 S Ct 384. In remanding for this relief, we note that only the ex post facto portion of the new law is void as to petitioner, and therefore any severable provisions which are not ex post facto may still be applied to him. See 2 C. Sands, Sutherland on Statutory Construction §44.04 (4th ed 1973).

In light of the eroneous information used and considered in the so called fair hearing, the Honorable defendant et al, (BOARD) could pretend to hold fair hearings for the remainder of the Plaintiffs life, but as long as the eroneous, inaccurate information is used, the outcome will be the same, (No fair or impartial hearing can insue). In closing, Plaintiff would like to offer the word "Insanity", to continue to repeat the same process repeatedly, and expect a different result, thats Insanity.

under newly Discovered evidence (exhibit 1), Plaintiff Wheeler has as a result of the forsaid P.S.I., been not only classified by this P.S.I. again wrongly by A.D.O.C. for a progress review, but even Ms Tanya Morris the A.D.O.C. classification specialist ENhanced the Progress review form contrary to the P.S.I., by stateing "Plural" - Nipples were cut off, when P.S.I. states "one", and, also ms Morris states on Progress review form "tied bottle to a tire rim", and the P.S.I. states wheeler through the bottle upon the side of the road. this reminds wheeler of the big fish story, The more its told, the bigger it gets. Wheeler started the big fish story in this case, and has tried to make it right, ever since.

CONCLUSION

Due to the nature of the case, and of the severe Prejudice exacted so far, the Plaintiff insists on the use of 12 of his neighbors and peers. The ultimate issue (Equal Protection of due Process) for a fair consideration for Parole review, through the fairness of the Defendants et al (Parole Board). Plaintiff opts for Judge and Jury to make this final decision, using accurate information, and to arrest the order of Judgment for the following grounds: Mistakes, Inadvertence, Excusable-Neglect, Fraud, Newly discovered evidence. Evidentiary Hearing Requested, as Hon. Judge thompsons Judgment should be declared VOID in compliance w/Rule 60 b as said order is no longer equitable that the Judgment should have prospective application, as the Judgment with excusable Neglect, was FRAUD, said Judgment is VOID, Plaintiff abiding by Rule 58. Fed. R. Civ. P.

I swear this to be true and correct to the best of my knowledge and ability, this the 21st day of June, 2007.

[signature]

MARK Shannon Wheeler 139044
Plaintiff, Pro se.

# Certificate of Service

I hereby the Plaintiff, Mark Shannon Wheeler, hereby Certify that I have by 1st Class Postage Pre Paid mailed a Copy of the Same, and served upon the Defendant et al, at:

AL. Bd. of Pardons and Paroles
"Legal Division"
301 South Ripley Street
P.O. Box 302405
Montgomery, AL. 36130

by Placing A Copy of the Same in the united State Mail Box At Kilby Prison, Inmates Mail Box, this the 25th day of June, 2007.

Mark Shannon Wheeler [signature]

MARK Shannon Wheeler 139044
Plaintiff Pro Se

Plaintiff:

Mark S. Wheeler
Ais # 139044-I-5-B
Kilby Corr. Fac.
P.O. Box 150
MT. meigs, AL. 36057

M.S. Wheeler
P.O. BOX 150
Mt. Meigs, AL
36057

Legal
Mail
Correspondence




UNITED STATES DISTRICT COURT,
United STATES DISTRICT JUDGE
Hon. Myron H. Thompson
P.O. BOX 235
Montgomery, AL. 36101